## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 1:22-CR-095 (RJL)** |
| | ) | |
| **BENJAMIN SOTO JR.,** | ) | **UNDER SEAL** |
| **also known as "Benji,"** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### GOVERNMENT'S MOTION FOR REVIEW AND APPEAL OF RELEASE ORDER

The United States respectfully moves this Court to hear an appeal to review Magistrate Judge Lynette Kimmins's denial of the government's Motion for Pretrial Detention and issue an order detaining Benjamin Soto, Jr., also known as "Benji" (the "Defendant) pending his initial appearance and arraignment in this District.  For the reasons that follow, there are no conditions or combination of conditions that can ensure the Defendant's appearance in the District of Columbia or ensure the safety of the community.  In support, we submit as follows:

### BACKGROUND

On April 6, 2022, the Defendant, was arrested in Nogales, Arizona, on a warrant issued in this District in the above-captioned matter.  The Defendant had an initial appearance before the Magistrate Court in the District of Arizona on April 7, 2022, pursuant to Rule 5 of the Federal Criminal Rules of Procedure.  At that time, the government moved to detain the Defendant pending his initial appearance and arraignment in the District of Columbia, which is scheduled for April 19, 2022.  On April 12, 2022, the Honorable Lynette Kimmins, U.S. Magistrate Judge for the District of Arizona, held a detention hearing and denied the government's motion for pretrial detention and ordered the Defendant released on the following conditions of release: the Defendant promises to appear at all proceedings and to surrender for service of any sentence

imposed; the Defendant shall not commit any federal, state, tribal or local crime; the Defendant shall cooperate in the collection of a DNA sample if collection is authorized; the Defendant shall immediately advise his attorney and Pretrial Services, in writing, prior to any change in residence address, mailing address, or telephone number; the Defendant shall report as directed to Pretrial Services; the Defendant shall not travel out of the state of Arizona and the District of Columbia, unless prior court permission is granted to travel elsewhere; the Defendant shall surrender all travel documents to Pretrial Services within five business days and will not obtain a passport or other travel document during the pendency of these proceedings; and the Defendant shall maintain or actively seek employment.  There was no bond, secured or otherwise.  On an oral motion by the government, Judge Kimmins's stayed the order of release until 5:00 p.m. EST on April 12, 2022.

The Defendant was a member of an international drug trafficking organization ("DTO") based out of Mexico that transported multi-kilogram quantities of fentanyl, cocaine, and methamphetamine into Arizona for further distribution throughout the United States, including to the District of Columbia. As detailed below, the Defendant is charged in this District with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time, including a mandatory minimum sentence of ten years on both counts; maintains familial and coconspirator contacts in Mexico; has a Mexico driver's license; has no ties to the District of Columbia; and lives less than five miles from the United States-Mexico border. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending his initial appearance and arraignment in this District.

On March 22, 2022, a federal grand jury sitting in the District of Columbia returned an indictment against the Defendant and two others, charging all three defendants with: (1) conspiracy to import five kilograms or more of cocaine, 400 grams or more of fentanyl, and 500 grams or more of methamphetamine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), (F), (H), and 963; and (2) conspiracy to distribute five kilograms or more of cocaine, 400 grams or more of fentanyl, and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), (vi), (viii), and 846.

The Indictment in this case is the product of an extensive, long-term investigation conducted by agents from the Federal Bureau of Investigation ("FBI"). The Government anticipates that the evidence at trial will show that the Defendant was part of a larger, complex international narcotics conspiracy from at least January 2020 until his arrest on April 6, 2022. The ultimate objective of the conspiracy was to import hundreds of kilograms of fentanyl, cocaine, and methamphetamine into the United States and to distribute those controlled substances across the United States.

At the time of his arrest, the Defendant was a FedEx employee who coordinated the shipments of fentanyl, cocaine, and methamphetamine from Mexico through his FedEx in Nogales, Arizona, to at least 21 different states in the United States and the District of Columbia. The Defendant utilized his position at FedEx to send the narcotics through at least 12 different legitimate business accounts without those businesses' knowledge.  He attempted to hide these mailings from law enforcement by sending the narcotics parcels via overnight priority air shipping, which would allow for quick delivery to narcotics traffickers throughout the United States.  He coordinated with at least 14 different narcotics couriers who would bring fentanyl, cocaine, and methamphetamine across the United States-Mexico border.  He also coordinated

with a Mexico-based DTO member who was responsible for sending the couriers and the narcotics.

In this investigation, FBI seized a total of approximately 87.5 kilograms of fentanyl, cocaine, heroin, and methamphetamine directly tied to the Defendant and his coconspirators. The Defendant and his coconspirators shipped 63.5 of the kilograms of fentanyl, cocaine, and methamphetamine seized by FBI during only a 74-day period in September through November 2021. Approximately two kilograms of the fentanyl seized were pressed into counterfeit OxyCodone 30mg pills. These seizures account for just 23 percent of the identified parcels the Defendant and his coconspirators sent under their scheme during that 74-day period. On the date of the Defendant's arrest, FBI also seized approximately nine kilograms of cocaine, one kilogram of black tar heroin, five and a half kilograms of fentanyl powder, and one and a half kilograms of fentanyl pills from a storage unit of a coconspirator. The storage unit was located less than a mile from the Defendant's FedEx, and the narcotics recovered were boxed and ready for mailing.

On April 6, 2022, after the Defendant was arrested and Mirandized, he admitted he knew the parcels he mailed under this scheme contained narcotics.

If this case proceeds to trial, the Government's evidence at trial is expected to consist of CCTV video footage showing the Defendant accepting and mailing narcotics parcels from the narcotics couriers; FedEx records showing the Defendant's use of business accounts to mail parcels under the scheme since at least January 2020; the Defendant's own admissions about his role in the organization and knowledge that he was shipping narcotics; and physical evidence stemming from the seizures of fentanyl, cocaine, and methamphetamine all over the United States.

The Defendant is a resident of Arizona.  The Government is not aware of any contacts the Defendant maintains in this District of Columbia. Pretrial Services Report at 2.

## ARGUMENT

### Standard of Review

The Bail Reform Act does not set out a standard of review to be applied by the District Court in reviewing the denial of a Motion for Pretrial Detention by a Magistrate Judge. However, the District Court has "broad discretion" in its review of decisions under the Bail Reform Act.  *United States v. Munchel,* 991 F.3d 1273, 1280 n. 3 (D.C. Cir. 2021).  "Evaluating the competing considerations is a task for the commissioner or judge in the first instance, and then the judges of the District Court (where they have original jurisdiction over the offense) have a broad discretion to amend the conditions imposed, or to grant release outright, if they feel that the balance has been improperly struck."  *Id*. (quoting *Wood v. United States*, 391 F.2d 981, 984 (D.C. Cir. 1968).

Furthermore, every circuit that has considered the question has held that a district court can review a magistrate judge's release or detention order *de novo*.  *United States v. Chrestman*, No. 21-mj-218, 2021 WL 765662 at *5 n. 5 (D.D.C., Feb. 6, 2021) (collecting Court of Appeals' decisions "uniformly endorsing a *de novo* standard of review").  This conclusion is supported by the statutory language of both the Bail Reform Act and the Federal Magistrates Act.  *Id*. at *6 ("In short, both the BRA and the Federal Magistrates Act lead to the conclusion that a district court reviews a magistrate judge's pretrial release or detention order *de novo*.  Unsurprisingly, this view is shared by every circuit court to have addressed the standard of review under § 3145 … and by the Local Rules of this Court, *see* Local Crim. R. 59.3(b)").

### The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence.18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *Simpkins*, 826 F.2d at 96. If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, he or she shall order the defendant detained. 18 U.S.C. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

## Statutory Presumption of Dangerousness and Risk of Flight

Under 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In this case, in both Counts One and Two of the Indictment, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substance Act. As the penalty of life imprisonment is more than 10 years, the presumptions of Section 3142(e) apply here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption. *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in Section 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. For all of the reasons addressed below, the Defendant will be unable to satisfy his burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

## Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offense charged establish that the Defendant is a risk of flight and a danger to the community. The conditions imposed by the Magistrate Judge are insufficient to ensure his appearance in this District or the safety of the community, nor are there any conditions or combination of conditions that would do so. The conditions imposed create no

meaningful restrictions on the Defendant's ability or incentive to flee the jurisdiction and are all entirely dependent on the presumption that the Defendant will comply with the law now that he has been arrested.

The trafficking activities of the Defendant and his coconspirator DTO members demonstrate that the Defendant has direct contact with and access to Mexico-based coconspirators, as well as their resources.  This, coupled with the fact that the Defendant's home is less than five miles from the United States-Mexico border yet 2,305 miles from Washington, DC, provides the Defendant with the ease, ability, and motive to flee the United States and avoid prosecution.  Additionally, under the current conditions of release he has five days before he needs to turn in his travel documents—ample time for him to flee to Mexico, where he has family and a place to live.

The object of the DTO, of which the Defendant was a critical member, is to import and covertly ship hundreds of kilograms of fentanyl, cocaine, and methamphetamine into the United States through private mail carriers for financial gain. The Defendant has established that he has the means, motive, and willingness to engage in a course of conduct that presents a direct threat to citizens across the United States, including distributing fentanyl and counterfeit Oxycodone pills during an opioid epidemic that is killing over 68,000 Americans every year.[1]  Moreover, he abused a position of trust in his employment with FedEx to commit these offenses and fraudulently billed unaware and innocent third-party businesses for the costs of shipping.  Were he to be released and flee to Mexico, there is nothing at present preventing the Defendant from

---

[1] National Institute on Drug Abuse, *Overdose Death Rates*, Jan. 20, 2022, https://nida.nih.gov/drug-topics/trends-statistics/overdose-death-rates (last accessed Apr. 11, 2022).

again seeking to import substantial amounts of dangerous narcotic drugs to the United States for profit.  At present, he would have the ability to do so alongside the existing DTO network based in Mexico, with whom he has direct contact regarding the importation and shipment of narcotics. As a result, if released the Defendant would present a danger to the community.

Accordingly, there is no condition or combination of conditions that would assure his appearance in the District of Columbia to face the Indictment against him.  *See* 18 U.S.C. § 3142(e)(1).

## History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish his heightened risk of flight in this case. A determination of risk of flight must be supported only by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). For the following reasons, there is no condition or combination of conditions that would assure his appearance in the District of Columbia to face the serious charges alleged against him in the Indictment.  The Defendant has no contacts in the District of Columbia.  Additionally, he has direct ties to and regular contact with numerous close relatives and contact with at least one coconspirator based in Mexico.  Although the Defendant's wife and daughter live with him in Nogales, Arizona, the investigation revealed the Defendant's wife also maintains an address in Sonora, Mexico, with her family that the couple visit frequently.  The Defendant also drives a vehicle that is registered to the address in Sonora, Mexico.  The Defendant operates multiple vehicles and maintains a Mexico Driver's License, which indicates that he has significant ties and at least partial residency in Mexico. The Defendant crossed into the United States from Mexico 117 times between January 1, 2021 and February 13, 2022.  His wife, Beatriz Soto, crossed into the United States from Mexico 258 times between January 1, 2021 and March 29, 2022.

Here, there is also an enhanced risk of flight in this case because his employment in Arizona is likely to be terminated. While the Defendant had been steadily employed at FedEx, he was arrested at FedEx after utilizing his position there to ship narcotics. He is likely to be released by FedEx and without legitimate employment. His proximity and strong ties to Mexico coupled with these recent changes in employment and legal circumstances greatly increase his risk of flight.  The Defendant has no incentive or apparent means to make his own way to the District of Columbia for his initial appearance and arraignment on the Indictment.

The possibility of a severe sentence is also an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also Ali*, 793 F. Supp. 2d at 392. As addressed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the counts charged in the Indictment, and the U.S. Sentencing Guidelines range for the charged offense would be even higher—292 to 365 months based on only the amount of methamphetamine seized.  *See* 21 U.S.C. § 960(b)(1)(B)(ii); U.S.S.G. § 2D1.1(c).  And, in light of the strength of the evidence, this factor is a significant one in this case.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S.

Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than in the type of transnational organized crime in which the Defendant has engaged. Organized transnational drug conspiracies often span multiple countries and have the potential to generate millions of dollars in gross proceeds from the sale of potent controlled substances. Indeed, "Congress made 'risk of flight' a ground for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

In sum, the Defendant has the motive and opportunity to flee the country and not appear in the District of Columbia. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad). There is no condition or combination of conditions that would assure his appearance in the District of Columbia to face the Indictment against him. *See* 18 U.S.C. § 3142(e)(1).

## Safety of the Community

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997). The Defendant

participated in an international drug transportation and distribution organization which imported fentanyl, cocaine, and methamphetamine—all dangerous controlled substances—into the United States for distribution to the United States public at large. The Defendant conspired to ship numerous kilograms of fentanyl pills, which appear like Oxycodone 30 milligram pills, and are not just dangerous, but deadly.  If he were released and continued in this conduct, he would pose a significant risk to the safety of the community, both here in the United States and abroad. Accordingly, there is no condition or combination of conditions that would assure the safety of the community.  *See* 18 U.S.C. § 3142(e)(1).

## **Weight of the Evidence**

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006) (finding detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant is overwhelming. The evidence includes the Defendant's own Mirandized statements that he knew his was shipping narcotics under the charged scheme.  The evidence also includes clear, in-color CCTV video footage showing the Defendant accepting and mailing narcotics parcels from the narcotics couriers; FedEx records showing the Defendant's fraudulent use of business accounts to mail parcels under the scheme since at least January 2020; and physical evidence stemming from the seizure of fentanyl, cocaine, and methamphetamine all over the United States.

Given the strength of the evidence against him, there is no condition or combination of conditions that would assure the Defendant's appearance in court or the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests this Court to convene a hearing to review the denial of the government's motion to detain the Defendant pending trial.  An analysis of the factors laid out in 18 U.S.C. § 3142(g) establishes (a) by clear and convincing evidence that there are no conditions or combination of conditions that reasonably assures the safety of the community and (b) by a preponderance of the evidence that that there are no conditions or combination of conditions that reasonably assures the appearance of the Defendant in court.  *See* 18 U.S.C. § 3142(e)(1), (f)(2).  Accordingly, the Court should detain the Defendant pending trial.

Respectfully submitted this 12th day of April 2022.

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:      /s/
Kate Naseef, Trial Attorney
Samantha Thompson, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Kate.Naseef@usdoj.gov
(202) 514-0917

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing Government's Motion for Pretrial Detention was filed on April 12, 2022, under seal.  I further certify that the Government has also provided a copy of this motion to defense counsel of record, Chris Scileppi, Esq., via e-mail.


By:        /s/
             Kate Naseef
             Trial Attorney
             Narcotic and Dangerous Drug Section
             Criminal Division
             U.S. Department of Justice