**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | : | |
| UNITED STATES OF AMERICA | : | No. 22-cr-95-01-RJL |
| | : | |
| | : | |
| v. | : | |
| | : | |
| BENJAMIN SOTO, JR., | : | |
| | : | |
| *Defendant*. | : | |
| _____ | : | |

**DEFENDANT BENJAMIN SOTO, JR.'S MOTION TO CHANGE VENUE**

Defendant, Benjamin Soto Jr., by and through his undersigned counsel, respectfully submits his Motion to Change Venue pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.

**INTRODUCTION**

The Government alleges that Benjamin Soto, Jr. engaged in a conspiracy to ship narcotics from Arizona, where he resided, to points outside of Arizona, while a FedEx employee working at a facility located in Arizona. Absent certain packages arriving in Washington, D.C., this jurisdiction has no connection to the events at issue in this case. Rather, all the relevant evidence, witnesses, and locations are in Arizona. As discussed herein, there are three categories of individuals that Mr. Soto would likely call as defense witnesses at trial: (i) FedEx employees and/or management; (ii) FedEx customers who did business with Mr. Soto while he was employed at FedEx; and (iii) character witnesses. All of these groups of witnesses reside in Arizona.

Rule 21(b) of the Federal Rules of Criminal Procedure and the Supreme Court's decision *in Platt v. Minnesota Mining & Manufacturing Company* support the transfer of this matter back to Arizona from where Mr. Soto and his codefendants were initially arrested. As the burden of

1

preparing Mr. Soto's defense in Washington, D.C. (for a case where all the relevant evidence, witnesses, and locations are in Arizona) is *substantial*, the Court should Order this matter be transferred to the United States District Court in Arizona (Tucson).

## FACTUAL BACKGROUND

Nogales, Arizona is a town of approximately 20,000 people located on the United States' border with Mexico. It is approximately 70 miles south of Tucson, Arizona – the closest United States District Court. According to the Indictment, the government began an investigation into activities at a FedEx shipping center located in Nogales, Arizona as early as 2020.

Benjamin Soto, Jr. was, at all times relevant to the government's investigation, an employee of this FedEx location. Between August 25, 2021 and November 4, 2021, government agents identified as many as 96 packages shipped from the Nogales, Arizona FedEx location. Law enforcement seized 21 of these 96 packages and discovered a significant quantity of illegal narcotics inside the packages. After identifying the 96 suspicious packages at issue, federal agents obtained subpoenas for shipping records as well as security camera footage from inside the FedEx location in Nogales, Arizona. According to the government, the agents' review of the video footage shows 14 different individuals who the government identifies as "drug couriers" dropping off packages at the FedEx location in Nogales, Arizona and providing FedEx employees with information relevant to shipping the packages.

In total, the government identified 13 legitimate businesses who possessed FedEx accounts which were utilized to mail the suspicious parcels. From a review of the disclosure, it is not clear whether the government will argue that the drug couriers provided the FedEx account information to the FedEx employees, including Mr. Soto, or that the FedEx employees looked up the FedEx accounts on their own. Nevertheless, after this initial investigation, agents went back and looked

at all packages shipped via these 13 different businesses and identified a total of 783 additional suspicious shipments.

Having conducted this investigation primarily in southern Arizona, and having used the United States District Court in Arizona (Tucson) to procure search warrants, the government opted to seek an Indictment against Mr. Soto and other employees of the FedEx location in Nogales, Arizona. For reasons unknown and unexplained, the government obtained that Indictment in the District of Columbia.

## ARGUMENT

Pursuant to Federal Rule of Criminal Procedure 21(b), a district court has the discretion to transfer a criminal trial "to another district for the convenience of the parties and witnesses and in the interests of justice." Fed. R. Crim. P. 21(b). The Supreme Court has laid out a balancing test to be used in exercising such discretion. *See Platt v. Minnesota Mining & Mfg., Co.*, 376 U.S. 240 (1964). "No one of the *Platt* considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Bowdoin*, 770 F. Supp. 2d 133, 137 (D.D.C. 2011); *United States v. Quinn*, 401 F. Supp. 2d 80, 85 (D.D.C. 2005).

The factors this Court should consider under *Platt* include:

(1)     The location of the defendant;

(2)     The location of possible witnesses;

(3)     The location of events likely to be at issue;

(4)     The location of documents and records likely to be involved;

(5)     The disruption of the defendant's business;

(6)     The expense to the parties;

(7)     The location of counsel;

(8)     The relative accessibility of place of trial;

(9)     The docket condition of each district or division involved; and

(10)    Any other special elements which might affect the transfer.

*Platt*, 376 U.S. at 243-44.

"To warrant a transfer from the district where an indictment was properly returned, it should appear that a trial would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *Bowdoin*, 770 F. Supp. 2d at 138 (*quoting Baltimore & Ohio R.R.*, 538 F. Supp. 200, 205 (D.D.C. 1982)). However, "Article III, section 2, of the Constitution provides that 'The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . .'" *Platt*, 376 U.S. at 245. "The Sixth Amendment carries a like command." *Id*. "The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed . . . The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 (1958).

### 1.     The Location of the Defendant

While Mr. Soto is presently incarcerated near the District of Columbia, he resides in Nogales, Arizona. This factor clearly relates to the residence of the defendant (in *Platt*, a corporate defendant) and weighs in favor of transfer to the District of Arizona.

### 2.     The Location of Possible Witnesses

"Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. [T]ransfer motions must identify the inconvenienced witnesses whom defendant[] proposes to call and contain a 'showing' of the proposed witness' testimony." *Bowdoin*, 770 F. Supp. 2d at 139. Here, there are three categories of witnesses Mr. Soto would

likely call as witnesses: (1) FedEx employees and/or management; (2) FedEx customers who did business with Mr. Soto while he was employed at FedEx; and (3) character witnesses. While some of these witnesses overlap categories, the following chart organizes each witness into the most applicable category.

*FedEx Employees and/or Management*

| Name | Proposed Testimony |
|------|--------------------|
| Unknown[1] (Current Manager of Nogales, AZ FedEx location) | Specific policies and procedures of FedEx, and whether direct supervisors provided any oversight of operations at FedEx location in Nogales, AZ. |
| Unknown (Previous Manager of Nogales, AZ FedEx location) | Specific policies and procedures of FedEx, and whether direct supervisors provided any oversight of operations at FedEx location in Nogales, AZ. |
| Unknown (Current Regional or District Manager of Nogales, AZ FedEx location) | How FedEx locations such as Nogales, AZ (specifically including Nogales, AZ) were supervised. Whether employees were provided instruction and/or training in identifying suspicious parcels. Policies and procedures implemented to curb the use of FedEx to ship narcotics. |
| Unknown (Previous Regional or District Manager of the Nogales, AZ FedEx Location) | How FedEx locations such as Nogales, AZ (specifically including Nogales, AZ) were supervised. Whether employees were provided instruction and/or training in identifying suspicious parcels. Policies and procedures implemented to curb the use of FedEx to ship narcotics. |
| Unknown (Co-workers at Nogales, AZ FedEx location) | Specific policies and procedures at the FedEx location in Nogales, AZ, lack of oversight by management, instruction to ship whatever parcels were dropped off without question |

---

[1] Mr. Soto does not currently possess the names of these individuals. He has subpoenaed that information from FedEx, and should know these potential witnesses' names and locations by the time of the hearing on this motion.

*FedEx Customers*

| Name | Residence | Proposed Testimony |
|---|---|---|
| Alberto Verdugo | Nogales, Arizona | Specific knowledge of Mr. Soto's employment at FedEx, his duties, and Mr. Verdugo's interactions with Mr. Soto as a customer of the FedEx Nogales, AZ location |
| Alfonso Cuevas | Rio Rico, Arizona | Specific knowledge of Mr. Soto's employment at FedEx, his duties, and Mr. Cuevas' interactions with Mr. Soto as a customer of the FedEx Nogales, AZ location |
| Luis Moreno | Nogales, Arizona | Specific knowledge of Mr. Soto's employment at FedEx, his duties, and Mr. Moreno's interactions with Mr. Soto as a customer of the FedEx Nogales, AZ location |
| Rodolfo Moreno | Nogales, Arizona | Specific knowledge of Mr. Soto's employment at FedEx, his duties, and Mr. Verdugo's interactions with Mr. Soto as a customer of the FedEx Nogales, AZ location |

*Character Witnesses[2]*

| Name | Residence | Proposed Testimony |
|---|---|---|
| Jesus Rene Contreras | Rio Rico, Arizona | How seriously Mr. Soto took his employment, how diligent an employee he was, observations that Mr. Soto would frequently communicate with customers outside of his employment hours via his own personal cell phone(s), Mr. Soto's finances, Mr. Soto's reputation in the community, Mr. Soto's aversion to narcotic drugs, and Mr. Soto's lack of associations with individuals involved in drug trafficking |
| Beatriz Soto | Nogales, Arizona | Same as above. |

| | | |
|---|---|---|
| Amalia Contreras | Rio Rico, Arizona | Same as above. |
| George Verdugo | Rio Rico, Arizona | Same as above. |
| Martha Verdugo | Rio Rico, Arizona | Same as above. |
| Martha Felix | Nogales, Arizona | Same as above. |
| Alberto Verdugo | Nogales, Arizona | Same as above. |
| Evagelina Samaniego | Nogales, Arizona | Same as above. |
| Sandra Alcantar | Nogales, Arizona | Same as above. |
| Eduardo Alcantar | Nogales, Arizona | Same as above. |
| Jose Montoya | Nogales, Arizona | Same as above. |
| Brianna Soto | Tucson, Arizona | Same as above. |
| Deerianna Soto | Nogales, Arizona | Same as above. |
| Olynka Murrieta | Rio Rico, Arizona | Same as above. |
| Christopher Felix | Phoenix, Arizona | Same as above. |
| Luis Samaniego | Rio Rico, Arizona | Same as above. |
| Jose Sotelo | Nogales, Arizona | Same as above. |
| Margie Khuns | Queen Creek, Arizona | Same as above. |
| Benjamin Soto Sr. | Nogales, Arizona | Same as above. |
| Sylvia Valencia | Nogales, Arizona | Same as above. |
| Oscar Verdugo Jr. | Rio Rico, Arizona | Same as above. |
| Rosa Elva Ochoa | Nogales, Arizona | Same as above. |
| Victor Caballero | Nogales, Arizona | Same as above. |

---

[2] It is unlikely that Mr. Soto would attempt to call all of the 26 witnesses listed below, but the 26 witnesses listed herein are a subset culled from an original list of more than 100 individuals who have indicated a desire to testify on Mr. Soto's behalf.

| Gabriela Velderrain | Nogales, Arizona | Same as above. |
| Olga Velderrain | Nogales, Arizona | Same as above. |
| Mabel Soto | Rio Rico, Arizona | Same as above. |

As the Court can see, every single presently identifiable witness relevant to Mr. Soto's defense resides in the District of Arizona. Compelling each of these individuals to fly to Washington D.C. and obtain lodging in order to testify at trial would be incredibly burdensome. That would be true in any year, but is especially true in these times of rampant inflation, surging air travel costs[3], and exorbitant hotel rates[4]. Being able to travel an hour by car to testify in Mr. Soto's defense would significantly reduce the burden upon all of these witnesses. This factor weighs in favor of a transfer to the District of Arizona.

### 3.    Location of Events Likely to be in Issue

Here, to the extent a crime was committed, and to the extent that Mr. Soto was involved in the commission of such a crime, his criminal activity occurred in Nogales, Arizona. Mr. Soto will likely not make issue of the location where packages were seized, where packages were shipped to, or the content of the packages. Rather, the events at issue are what occurred at the Nogales, Arizona FedEx location and Mr. Soto's knowledge of those events in real-time as they were occurring in Nogales, Arizona. This factor weighs in favor of a transfer to the District of Arizona.

### 4.    Location of the Documents and Records Likely to be Involved

The documents and records in this case are presumably threefold: (1) FedEx shipping records; (2) surveillance footage from inside the Nogales, Arizona FedEx location; and (3) the

---

[3] Air travel costs up 34% year-over-year: https://www.latimes.com/business/story/2022-05-26/flights-ticket-prices-airfare-expensive-summer-travel

[4] Hotel rates up 25-30% year-over-year: https://www.cnbc.com/2022/06/11/why-marriott-hilton-and-hyatt-say-hotel-prices-are-only-going-up.html

parcels that were seized. While all these documents are now in the possession of the government, most originated from the Nogales, Arizona FedEx location. This factor likely is neutral, but if it weighs in favor of either side, it weighs in favor of a transfer to the District of Arizona.

**5.      Disruption of the Defendant's Business**

This factor is inapplicable.

**6.      Expense to the Parties**

The expense to the government will likely be greater in Washington D.C. than it would be in the District of Arizona. A significant number of agents and likely government witnesses are in Arizona. Flying them to Washington D.C. to testify at trial, along with any lodging expenses, will inevitably cost the government more than it would to have them testify in Tucson, Arizona. The exact same is true for both counsel for Mr. Soto as well as witnesses for Mr. Soto. Trying this case in Washington D.C. would be more burdensome on both parties. This factor weighs in favor of a transfer to the District of Arizona.

**7.      Location of Counsel**

Lead counsel for Mr. Soto is located in Tucson, Arizona, as is a very competent and well-staffed United States Attorney's Office. Counsel for the government would not be burdened by this case being tried in Arizona. Counsel for Mr. Soto would be significantly burdened – he would likely have to pause his practice in Tucson and relocate to Washington D.C. for the runup to a lengthy trial. This factor weighs in favor of a transfer to the District of Arizona.

**8.      Relative Accessibility of Place of Trial**

Relative accessibility of the place of trial will be better for some and worse for others in each district. This factor should be considered inapplicable here.

### 9.        Docket Condition of Each District or Division Involved

While the District Court for the District of Columbia handles fewer criminal cases per year than the District of Arizona, the vast majority of cases in the District of Arizona are illegal re-entry or alien smuggling offenses. For the year ending March 31, 2022, of the 5,010 cases filed in the District of Arizona, 3,686 (74 percent) were either illegal reentry or alien smuggling offenses. An overwhelming majority of these cases resolve by a quick plea. By contrast, a significant percentage of criminal cases filed in the District of Columbia involve Regulatory Offenses (18 percent of D.C. District Court criminal case load), Justice System Offenses (26 percent), Fraud (9 percent) and Assault (10 percent). These types of cases are all far more likely to be resolved by jury trial than most cases prosecuted in the District of Arizona. On balance, this factor should be neutral.

Of the nine specific, non-catch-all factors laid out in *Platt*, five weigh strongly in favor of a transfer to the District of Arizona: the location of the defendant, the location of witnesses, the location of events likely to be in issue, the expense to the parties, and the location of counsel; one weighs slightly in favor of a transfer to the District of Arizona: the location of documents and records likely to be involved; and three are either inapplicable or equally balanced: disruption of the defendant's business, relative accessibility of place of trial, and docket condition of each district or division involved.

### 10.        Any Other Special Elements Which Might Affect the Transfer

Lastly, given that Mr. Soto's lead counsel is located in Tucson, Arizona, a transfer back to the District of Arizona would result in Mr. Soto being jailed in Florence, Arizona – a roughly 75-minute drive from counsel's office. That geographic proximity would make it significantly easier for Mr. Soto to exercise his Sixth Amendment right to counsel of choice in preparing for a trial in this matter.

**CONCLUSION**

The fact of the matter is that this case never should have been brought in the District of Columbia in the first place. While venue might be legally proper here, insofar as some of the parcels shipped might have been directed to the District of Columbia, venue is and always has been more proper in the District of Arizona. Following a consideration of the *Platt* factors, this Court should conclude that a transfer of venue is appropriate and should order that this case be transferred to the United States District Court for the District of Arizona in Tucson.

Dated: July 19, 2022

<div style="margin-left:40%;">

Respectfully submitted,

   /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

Christopher L. Scileppi, *Admitted Pro Hac Vice*
Law Office of Christopher L. Scileppi, P.L.L.C.
115 W. Washington Street
Tucson, Arizona 85701
Telephone: (520) 449-8446
Facsimile:   (520) 449-8447
Email: chris@scileppilaw.com

</div>